**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JULIE GRAHAM, individually,
and on behalf of all others
similarly situated,

      Plaintiff,

v.                                                                No. _____

BLUE CROSS AND BLUE SHIELD
of NEW MEXICO,

      Defendant.

<u>**NOTICE OF REMOVAL**</u>

Please take notice that, pursuant to 28 U.S.C. §§ 1332(a) and (d), 1441, and 1446,

Defendant HCSC Insurance Services Company ("HISC"), by and through its undersigned

attorneys, hereby removes the above-captioned action from the First Judicial District Court,

County of Santa Fe, State of New Mexico, to the United States District Court for the District of

New Mexico.  As grounds for removal, HISC states as follows:

**I.**    **Procedural History and Background**

1.    On or about March 21, 2022, Plaintiff Julie Graham filed a Complaint captioned

*Julie Graham, individually and on behalf of all others similarly situated v. Blue Cross and Blue*

*Shield of New Mexico*, Case No. D-101-CV-2022-00474 (the "Action") in the First Judicial

District Court, County of Santa Fe, State of New Mexico (the "State Court").  There are no

defendants to the Action other than HISC.

2.    Aside from the complaint, no other process, pleadings, or orders have been served

upon HISC.  In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders

served upon HISC are attached hereto as Exhibit A.

3.      The Complaint alleges that "Defendant BCBS is a corporate entity part of Health Care Service Corporation." Ex. A at ¶ 2. The Complaint further alleges that "[s]ometime prior to January 1, 2019, Defendant BCBS  entered into a Contract with the State of New Mexico and its agencies ("Contract")" and that "[f]rom time to time the Contract has been renewed and/or amended by the parties, with the present version of the Contract being version number PSC 18-630-8000-033 A4 CFDA 93.788." Ex. A at ¶¶ 3, 5, 33.  The Complaint further describes "Defendant BCBS" as "a managed care organization that participates in Centennial Care under contract with the state's Human Services Department" and provides "Medicaid benefits, pursuant to federal and state Medicaid law, rules, and regulations, to which Plaintiff GRAHAM and others are entitled, on behalf of the State of New Mexico."  Ex. A at ¶¶ 32, 34.

4.      HISC is the only entity that matches Plaintiff's description as the Defendant because HISC is a wholly-owned subsidiary of Health Care Service Corporation, a Mutual Legal Reserve Company (Compl. ¶ 2) and entered into the Contract with the Human Services Department (Compl. ¶¶ 3, 5, 33), pursuant to which HISC is a managed care organization (MCO) for Centennial Care 2.0 and provides related benefits to Plaintiff and others (Compl. ¶¶ 32, 34). State of New Mexico Human Servs. Dep't, *https://www.hsd.state.nm.us/wp-content/uploads/CC-2_0-BLUE-CROSS-BLUE-SHIELD-NM-SIGNED-CONTRACT.pdf* (last visited Apr. 1, 2022).[1]

---

[1] Websites of government agencies are matters of public record subject to judicial notice.  *United States v. Iverson*, 818 F.3d 1015, 1021 (10th Cir. 2016) (explaining "government websites constitute public records"); *Schmidt v. Int'l Playthings LLC*, 536 F. Supp. 3d 856, fn 58 (D.N.M. 2021) ("the Court takes judicial notice of the CPSC's website because an agency's website is a matter of public record and a source whose accuracy cannot reasonably be questioned"). The link is to the Centennial Care 2.0 contract, which has been since amended five times; the Complaint identifies the fourth such amendment, "A4." All such amendments are available at https://www.hsd.state.nm.us/lookingforinformation/medical-assistance-division/.

5.     HISC is Plaintiff's MCO.  Ex. A at ¶ 36; State of New Mexico Human Servs.

Dep't, *https://www.hsd.state.nm.us/wp-content/uploads/CC-2_0-BLUE-CROSS-BLUE-SHIELD-NM-SIGNED-CONTRACT.pdf* (last visited Apr. 1, 2022).

6.     On March 24, 2022, plaintiff served a copy of the complaint on CSC, HISC's

registered agent.[2]

7.     HISC is both headquartered and incorporated in Illinois.

8.     HISC's time to answer the Complaint has not expired, and HISC has not served or

filed an answer.

9.     The Complaint asserts claims for breach of contract, breach of covenant of good

faith and fair dealing, breach of fiduciary duty, violations of the New Mexico Insurance Code,

and violations of the New Mexico Unfair Practices Act as a result Defendant's alleged refusal to

preauthorize a surgical procedure for Plaintiff until after she had filed multiple appeals.

10.     The First Judicial District Court for the County of Santa Fe is located within the

District of New Mexico.  28 U.S.C. § 111.  Therefore, this Court is the proper venue for removal

of the Action pursuant to 28 U.S.C. § 1441(a) because this is the district and division where the

Action was pending.

---

[2] Plaintiff also attempted service through the Office of Superintendent of Insurance in New Mexico (the "OSI"). The summons served on OSI identified the Defendant only as "Blue Cross and Blue Shield of New Mexico." Upon being served by plaintiff, OSI forwarded a copy of the complaint to Blue Cross and Blue Shield of New Mexico Insurance Company, a different legal entity (which changed its name to 505 Insurance Company in 2021) that is not a contracted MCO with the State of New Mexico Human Services Department, and does not offer the Blue Cross Community Centennial health plan.

## II.    Grounds for Removal

### A.    Diversity of Citizenship, 28 U.S.C. § 1332(a)

9.      This Court has original jurisdiction over this Action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between Plaintiff and HISC, and the alleged amount in controversy exceeds $75,000.

10.     Plaintiff Julie Graham is a citizen of the State of New Mexico.  Ex. A at ¶ 1.

11.     Other class members—all of whom are alleged to be New Mexico Medicaid recipients—are also residents of New Mexico.

12.     HISC is citizen of the state of Illinois and is not a citizen of the state of New Mexico.   To determine HISC's citizenship for diversity purposes, the court looks only to a corporation's state of incorporation and the state in which its "nerve center" or headquarters, is located.  *See Hertz Corp. v. Friend*, 559 U.S. 77, 91–93 (2010); *see also Farag v. Health Care Service Corporation*, 2017 WL 2868999, at *13 (N.D. Ill. July 5, 2017) (collecting cases).  HISC is incorporated and headquartered in Chicago, Illinois.

13.     The amount-in-controversy requirement for diversity jurisdiction is also satisfied.

14.     The Complaint does not allege that Plaintiffs' damages are less than $75,000. To the contrary, the Complaint does not purport to quantify the amount of damages that Plaintiff seeks in this action.  Nor does the Complaint provide a methodology by which such damages can be calculated.

15.     While HISC does not agree that Plaintiff has adequately alleged, or is entitled to, any damages, Plaintiff's claim appears to place more than $75,000 at issue.  Plaintiff's causes of action include claims for "Punitive Damages" and "attorney's fees."  Ex. A, Counts VII-VIII. Plaintiff also alleges violations of the New Mexico Unfair Practices Act, NMSA 1978, § 57-12-1

(2003) *et seq.*, *see* Ex. A, Complaint ¶¶ 137–143, which provides that a prevailing plaintiff may be entitled to actual damages, three times actual damages, and attorneys' fees and costs. § 57-12-10. Thus, although HISC denies any and all liability to Plaintiff, the amount in controversy exceeds $75,000.

16. Based on the foregoing, diversity jurisdiction exists and the Action is properly removed to this Court under 28 U.S.C. § 1441.

**B.    Class Action Fairness Act, 28 U.S.C. § 1332(d)**

17. This Court also has original jurisdiction over this Action because it is a putative class action in which the matter in controversy is greater than $5,000,000, minimal diversity exists between the proposed plaintiff class and Defendant HISC, and no grounds for declining to exercise jurisdiction pursuant to 28 U.S.C. §§ 1332(d)(3) or (4) exist because HISC is not a citizen of New Mexico.

18. Plaintiff brings this Action "individually and on behalf of all others similarly situated," qualifying it as a class action under 28 U.S.C. § 1332(d)(1)(B). Ex. A, Complaint, at 1, 3; *see also* N.M. R. Civ. P. Dist. Ct. 1-023. Plaintiff alleges that HISC has a business practice of "forcing" New Mexico Medicaid recipients to file multiple appeals for care that will ultimately be approved, in order to discourage them from seeking such care. Ex. A, Complaint, at 2. Plaintiff also alleges that HISC intentionally reverses denials shortly before New Mexico Fair Hearing Bureau review in order to prevent State oversight of its practices. *Id.* at 2–3.

19. Plaintiff Julie Graham, who seeks to represent the putative class, is a citizen of New Mexico. *See supra* ¶ 10.

20. Defendant HISC is a citizen of Illinois. *See supra* ¶ 12.

21.    Because Julie Graham is a citizen of New Mexico and HISC is a citizen of Illinois, CAFA's minimal diversity requirement is satisfied.

22.    The Complaint alleges that as of January 2019, there were 220,306 enrollees in the Blue Cross Community Centennial program. Ex. A at ¶ 160. Those numbers increased to 267,795 as of December 2020 and 291,272 in January 2022. *Id*.

23.    HISC maintains that the Complaint fails to define a certifiable class, and that the class definition proffered in the Complaint impermissibly requires adjudication of the merits of each individual's entitlement to benefits and/or reimbursement as a precondition to determining class membership. Ex. A at ¶ 156. HISC also denies that any participants in the Blue Cross Community Centennial managed health care program were denied benefits and/or reimbursement for goods or services for which they were eligible under the program. Nevertheless, based on the allegations in the Complaint, Plaintiff is attempting to represent more than 100 proposed plaintiffs.

24.    Under the New Mexico Unfair Practices Act, prevailing plaintiffs may also recover attorneys' fees and costs. § 57-12-10(C).

25.    The claims of individual class members must be aggregated to determine whether more than $5,000,000 is in controversy. 28 U.S.C. § 1332(d)(6).

26.    The Complaint does not allege that the aggregate damages of the putative class are less than $5,000,000. Nor does the complaint purport to quantify the amount of damages that Plaintiff seeks in this action or provide a methodology by which such damages can be calculated.

27.    While HISC does not agree that Plaintiff has adequately alleged, or is entitled to, any damages, Plaintiff's aggregated class claims appear to place more than $5,000,000 at issue.

*See supra* ¶ 15. Thus, although HISC denies any and all liability to Plaintiff, the aggregate class-wide amount in controversy exceeds $5,000,000.

28.    Because HISC is not a citizen of New Mexico, this Court may not decline to exercise jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(3).

29.    Because HISC is not a citizen of New Mexico, this Court may not decline to exercise jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(4)(A)(i)(II)(cc).

30.    This action does not solely involve a claim concerning a covered security as defined under 16(f)(3) of the Securities Act of 1933 and section 28(f)(5) of the Securities Exchange Act of 1934.

31.    This action does not solely involve the internal affairs or governance of a corporation or other form of business enterprise arising under or by virtue of the laws of New Mexico or Illinois.

32.    This action does not relate to the rights, duties, and/or obligations relating to or created by or pursuant to any security as defined under section 2(a)(1) of the Securities Act of 1933 and/or the regulations issued thereunder.

**III.    Other Removal Requirements**

19.    This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), as it is being filed within 30 days of service of the Complaint on HISC.

20.    Promptly after filing of this Notice of Removal, HISC shall provide written notice of the removal to Plaintiff through her attorney of record in the Action and to the Clerk of the Court in the State Court, as required by 28 U.S.C. § 1446(d).

21.    Within 28 days after filing this Notice of Removal, HISC shall file legible copies of all records and proceedings from the State Court Action with the Clerk of this Court, as required by LCvR 81.1(a).

22.    HISC reserves all rights, defenses, and objections, including but not limited to defenses and objections relating to venue and personal jurisdiction, and the filing of this Notice of Removal is subject to, and without waiver of, any such defenses and objections.

**WHEREFORE**, HISC hereby provides notice that this Action is duly removed to this Court.

Dated:  April 22, 2022

Respectfully submitted,

/s/ Benjamin E. Thomas
Benjamin E. Thomas
SUTIN THAYER & BROWNE APC
PO Box 1945
Albuquerque, NM 87103-1945
bet@sutinfirm.com

*Attorney for Defendant HISC Insurance Services Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 22, 2022, a copy of the foregoing was sent via email and

first-class mail to the following:

Pierre Levy
LAW OFFICE OF PIERRE LEVY, LLC
644 Don Gaspar Ave.
Santa Fe, NM 87505
pierre@levylaw.net

<div style="margin-left:50%">

*/s/ Benjamin E. Thomas*
Benjamin E. Thomas
SUTIN THAYER & BROWNE APC
PO Box 1945
Albuquerque, NM 87103-1945
bet@sutinfirm.com

</div>

FIRST JUDICIAL DISTRICT COURT
COUNTY OF SANTA FE
STATE OF NEW MEXICO
Case No. ~~D-101-CV-2022~~

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
3/21/2022 11:49 AM
KATHLEEN VIGIL CLERK OF THE COURT
Judyn Martinez

JULIE GRAHAM, individually
and on behalf of
all others similarly situated,

          Plaintiff,

v.

BLUE CROSS AND BLUE SHIELD
of NEW MEXICO,

          Defendant.

D-101-CV-2022-00474
Case assigned to Wilson, Matthew Justin

**COMPLAINT FOR BREACH OF CONTRACT,
BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING,
BREACH OF FIDUCIARY DUTY,
VIOLATIONS OF THE NEW MEXICO INSURANCE CODE,
NMSA 1978, § 59A-16-4 (1984),
VIOLATIONS OF THE NEW MEXICO INSURANCE CODE,
NMSA 1978, § 59A-16-20 (1997),
VIOLATIONS OF THE NEW MEXICO UNFAIR PRACTICES ACT,
NMSA 1978, § 57-12-1 (2003),
PUNITIVE DAMAGES,
AND ATTORNEY'S FEES.**

PLAINTIFF, JULIE GRAHAM, individually and on behalf of all others similarly

situated, hereby comes forth and bring her Complaint for Breach of Contract, Breach of

Covenant of Good Faith and Fair Dealing, Breach of Fiduciary Duty, Violations of the New

Mexico Insurance Code, NMSA 1978, § 59A-16-4 (1984), Violations of the New Mexico

Insurance Code, NMSA 1978, § 59A-16-20 (1997), Violations of the New Mexico Unfair

Practices Act, NMSA 1978, § 57-12-1 (2003), Punitive Damages, and Attorney's Fees, and

states as follows:

# EXHIBIT A

## Summary of claims

Plaintiff GRAHAM, as a result of serious medical conditions, is Medicaid eligible and receives Medicaid assistance from the State of New Mexico. The State of New Mexico calls its Medicaid program "Centennial Care," and has elected to provide certain Medicaid benefits through a managed care system.

The State of New Mexico has contracted with a Managed Care Organization, Defendant Blue Cross and Blue Shield of New Mexico ("BCBS"), to provide certain Medicaid benefits to eligible New Mexico citizens. Defendant BCBS calls its New Mexico Medicaid managed care program "Blue Cross Community Centennial."

In order to obtain Medicaid benefits to which she was legally entitled, Plaintiff GRAHAM was obligated to enroll in a Managed Care Organization. Plaintiff GRAHAM duly enrolled in Defendant BCBS's Blue Cross Community Centennial program.

Plaintiff GRAHAM alleges that Defendant BCBS, although obligated by law and by contract to authorize certain medical care for Plaintiff GRAHAM, routinely and systematically and as part of its business practices refused such authorization in order to discourage Plaintiff GRAHAM from obtaining this care, forcing her to repeatedly appeal Defendant's denial of benefits, first to Defendant and then to the State of Mexico's Fair Hearing Bureau. After all those appeals were made and prior to the start of the Fair Hearing, Defendant BCBS then at the last minute agreed to provide the benefits Plaintiff GRAHAM sought and was due under New Mexico's Medicaid program and under the contract with BCBS. Plaintiff GRAHAM alleges Defendant BCBS engages in the business practices of forcing Medicaid recipients to file multiple appeals in order to discourage claimants from seeking care and to increase its profits. Plaintiff GRAHAM also alleges that

Defendant BCBS engages in these business practices of avoiding Fair Hearing Bureau review, at least in some instances, to avoid oversight by the State of New Mexico of its business practices.

Plaintiff GRAHAM seeks class action status, to act on behalf of herself and all other New Mexico citizens similarly situated.

## The parties, jurisdiction, and venue

### I.  The parties.

1.  Plaintiff JULIE GRAHAM ("GRAHAM") is a citizen of New Mexico and a resident of the County of Bernalillo, State of New Mexico.

2.  Defendant BCBS is a corporate entity part of HEALTH CARE SERVICE CORPORATION.  On information and belief, Defendant BCBS is authorized to provide insurance and transact business in the State of New Mexico.  Defendant BCBS's principal place of business is at 5701 Balloon Fiesta Parkway NE, Albuquerque, New Mexico 87113. By operation of law, Defendant BCBS may be found and served with process in the County of Santa Fe, State of New Mexico by service upon the New Mexico Superintendent of Insurance.

### II.  Jurisdictional facts.

3.  Some time prior to January 1, 2019, Defendant BCBS entered into a Contract with the State of New Mexico and its agencies ("Contract").

4.  Some purposes of the Contract are, in part, to provide services that will or are likely to improve quality of care or improve access to care to Medicaid-eligible Recipients.

5.  The "Go Live" date of the Contract, the date on which Defendant assumed responsibility for providing the services enumerated in the Contract, was January 1, 2019. From time to time, the Contract has been renewed and/or amended by the parties, with the present version of the Contract being version number PSC 18-630-8000-0033 A4 CFDA 93.778. On information and belief, the present Contract runs until December 31, 2023, but may be renewed thereafter for additional one year periods not to exceed 8 years for the total contract period.

6.  All of Defendant's responsibilities under the Contract must be performed, where specified and available, in the State of New Mexico.  The Contract, however, specifically allows benefits to be provided from an out-of-state provider in the United States when certain conditions are met, including where benefits sought are not available in the State of New Mexico.

7.  Under the terms of the Contract, Defendant BCBS must designate key management and technical personnel responsible for performance of the Contract, which the Contract calls "Key Personnel."  Key Personnel are those with management responsibility or principal technical responsibility for certain functional areas, as opposed to multiple persons equaling a full-time equivalent.

8.  Under the terms of the Contract, all Key Personnel shall reside in the State of New Mexico.

9.  Defendant's President, Janice Torrez, a Key Personnel, is a resident of the State of New Mexico.

10.  On information and belief, Defendant's Chief Executive Officer, a Key Personnel, resides in the State of New Mexico.

11. Defendant's Chief Medical Officer, a Key Personnel, resides in the State of New Mexico.

12. Defendant's board-certified psychiatrist who oversees all Behavior Health activities and takes an active role in Defendant's medical management team and clinical and policy decisions, a Key Personnel, resides in the State of New Mexico.

13. Defendant's senior executive who oversees and is responsible for all long-term care activities, a Key Personnel, resides in the State of New Mexico.

14. Defendant's full-time Chief Financial Officer dedicated to the Contract, a Key Personnel, resides in the State of New Mexico.

15. Defendant's full-time Contract Manager dedicated to the Contract, a Key Personnel, resides in the State of New Mexico.

16. Defendant's full-time Compliance Officer, a Key Personnel, resides in the State of New Mexico.

17. Defendant's full-time Chief Information Officer, a Key Personnel, resides in the State of New Mexico.

18. Defendant's full-time staff person dedicated to the Contract who oversees and is responsible for provider services and provider relations, a Key Personnel, resides in the State of New Mexico.

19. Defendant's full-time staff person dedicated to the Contract who oversees and is responsible for all Utilization Management activities, QM/QI activities, and program integrity, a Key Personnel, resides in the State of New Mexico.

20. Defendant's full-time staff person dedicated to the Contract who oversees and is responsible for Native American Health disparity issues and Cultural Competence

concerns, a Key Personnel, resides in the State of New Mexico.

21.   Defendant's six full-time staff persons who work with Indian Health Service, Tribal Health providers, or Urban Indian providers, Key Personnel, reside in the State of New Mexico.

22.   Defendant's full-staff person dedicated to the Contract who oversees Member services, a Key Personnel, resides in the State of New Mexico.

23.   Defendant's full-staff person dedicated to the Contract and who acts as Claims Administrator, a Key Personnel, resides in the State of New Mexico.

24.   Defendant's full-time staff person dedicated to the Contract and who acts as Grievances and Appeals manager, a Key Personnel, resides in the State of New Mexico.

25.   Defendant's full-time staff person dedicated to the Contract and who acts as an Ombudsman, a Key Personnel, resides in the State of New Mexico.

26.   Defendant's Director of Pharmacy, dedicated to the Contract and licensed to practice pharmacy in the State of New Mexico, resides in the State of New Mexico.

27.   Defendant maintains a call center to answer its insureds' questions, concerns, inquiries, and complaints, with the center and its staff located and operated in the State of New Mexico.

28.   Defendant is a citizen of the State of New Mexico, with its principal place of business located within the State of New Mexico.  Defendant's officers direct, control, and coordinate Defendant's activities under the Contract in the State of New Mexico.

**III.  Jurisdiction and venue.**

29.   This Court has jurisdiction over the subject matter and the parties in this action.

30.   Venue is proper in this Court pursuant to New Mexico law.

-6-

## Facts common to all counts

I.    **The State of New Mexico Centennial Care Medicaid Program and Defendant BCBS's contract with the State of New Mexico.**

A.    **Defendant BCBS's Contract with the State of New Mexico.**

31.    "Centennial Care" is the name of the New Mexico Medicaid program. Centennial Care began on January 1, 2014 with services provided by four managed care organizations (MCOs). These services include physical health, behavioral health, long-term care and community benefits.

32.    Defendant BCBS is one of those managed care organizations. Defendant BCBS participates in Centennial Care under contract with the State's Human Services Department to assist the State in meeting the requirements established under NMSA 1978, § 27-2-12, part of the State's Public Assistance Act.

33.    Some time prior to January 1, 2019, Defendant BCBS entered into a Contract with the State of New Mexico and its agencies ("Contract"). The "Go Live" date of the Contract, the date on which Defendant assumed responsibility for providing the services enumerated in the Contract, was January 1, 2019. From time to time, the Contract has been renewed and/or amended by the parties, with the present version of the Contract being version number PSC 18-630-8000-0033 A4 CFDA 93.778.

34.    The purpose of the Contract is to provide Medicaid benefits, pursuant to federal and state Medicaid law, rules, and regulations, to which Plaintiff GRAHAM and others are entitled, on behalf of the State of New Mexico. In the Contract, the State of New Mexico manifests an intention that Medicaid recipients, such as Plaintiff GRAHAM, receive the full and complete benefits afforded to them under federal and state Medicaid law, rules, and

-7-

regulations.

35. On information and belief, the Contract embodies federal and state law, rules, and regulations of the Medicaid program. Under the terms of the Contract, Defendant BCBS is obligated to comply with all applicable federal and State statutes, rules, regulations, policies, consent decrees, executive order, and court orders.

36. Pursuant to law, in order to obtain the Medicaid benefits to which she is entitled under federal and state law, rules, and regulations, Plaintiff GRAHAM was required to enroll with a managed care organization, such as Defendant BCBS, and Plaintiff GRAHAM did so enroll with Defendant BCBS. She is a "Member" of Defendant BCBS's Blue Cross Community Centennial program, and was a member of this program at all times relevant to the allegations of this Complaint.

37. Eligibility for all Medicaid programs requires that individuals meet certain federal guidelines. These include citizenship, residency and income requirements. Plaintiff GRAHAM meets all those requirements.

38. Under the Contract, Defendant BCBS has an obligation to provide medical care to Members, such as Plaintiff GRAHAM, that is medically necessary. "Medically Necessary means physical, behavioral health, and long-term services and supports, and supplies, that: (i) are essential to prevent, diagnose or treat medical conditions or are essential to enable the Member to attain, maintain or regain the Member's optimal functional capacity; (ii) are delivered in the amount, duration, scope and setting that are both sufficient and effective to reasonably achieve their purposes and clinically appropriate to the specific physical, behavioral health, and long-term care needs of the Member; (iii) are provided within professionally accepted standards of practice and national guidelines; (iv) are

required to meet the physical, behavioral health, and long-term care needs of the Member and are not primarily for the convenience of the Member, the provider, or the CONTRACTOR; and (v) are reasonably expected to achieve appropriate growth and development as directed by [the New Mexico] H[uman] S[ervices] D[epartment]."

39. Under the terms of the Contract, if Defendant BCBS is unable to provide care to a Member using one of the medical providers within its network, Defendant BCBS has an obligation to provide this care using a non-network provider.

40. Providers are institutions, facilities, agencies, physicians, health care practitioners, or other entities or persons that are licensed or otherwise authorized to provide services to Members.

41. Under the Contract, Defendant BCBS's duty to provide coordination of care for Members is non-delegable.

42. Under the Contract, Defendant BC/BS's ultimate responsibility for quality management and quality improvement is non-delegable.

43. Under the terms of the Contract, Defendant BCBS can not arbitrarily deny, or reduce in amount or scope, medical care to an otherwise eligible individual, such as Plaintiff GRAHAM, simply because Plaintiff GRAHAM had a poor prognosis, or because of Plaintiff GRAHAM's diagnosis, type of illness, or condition.

44. Defendant BCBS acts as and is an insurance company, providing health insurance to Medicaid recipients under the terms of the Contract. Health insurance, as defined in the Contract, "means insurance that covers the whole or part of the risk of a person['s] incurring medical expenses, spreading the risk over a large number of persons." Plaintiff GRAHAM is one of Defendant BCBS's insureds.

45.  Defendant BCBS represents or represented to the State of New Mexico, and the public at large, that its business purpose is:

> [t]o transact all types of health insurance as defined in NMSA 59A-7-3 and to establish and operate a health maintenance organization pursuant to NMSA 59A-46-3.  To render services related to the Corporation's insurance business, including, but not limited to, actuarial, loss prevention, data processing, risk management, accounting, claims, appraisal and collection services.

46.  Under the Contract, Defendant BCBS has an obligation to ensure that any decision to deny a service authorization request or to authorize a service in an amount, duration, or scope that is less than requested, be made by a health care professional who has appropriate clinical expertise in treating the Member's condition or disease.

47.  The Contract contains a boiler plate "No Third-Party Beneficiary" clause.  The Contract's boiler plate "No Third-Party Beneficiary" clause, as a matter of public policy and law, does not bar Blue Cross Community Centennial members, such as Plaintiff GRAHAM, from bringing claims against Defendant BCBS to enforce their rights under the Contract and federal and state Medicaid law, rules, and regulations for benefits to which they are entitled.  Notwithstanding any disclaimer in the Contract, the language of the entire contract, taken as a whole, shows that Plaintiff GRAHAM is an intended third-party beneficiary to the Contract, entitled to enforce the Contract, either individually or as a member of a class of beneficiaries.

**B.    Appeals of denial of Medicaid benefits or medical care.**

48.  Defendant BCBS, in the first instance, solely decides whether to authorize and provide Medicaid benefits or Medicaid-eligible medical care to Community Centennial enrollees such as Plaintiff GRAHAM.

-10-

49. If Defendant BCBS denies authorization for Medicaid benefits or medical care, Defendant BCBS has, pursuant to the terms of the Contract, an internal appeal process. Insureds such as Plaintiff GRAHAM who are aggrieved by any initial adverse benefit determination are required to first participate in that internal process before requesting an external appeal, to the State of New Mexico Fair Hearings Bureau.

50. In order to obtain medical care to which she was entitled by federal and state Medicaid law and regulation, therefore, Plaintiff GRAHAM had to exhaust Defendant BCBS's internal appeal before asking the State of New Mexico, through the Fair Hearings Bureau, for help.

51. Under the Contract and the Blue Cross Community Centennial program, in the event that Defendant BCBS denies Plaintiff GRAHAM's internal appeal, Plaintiff GRAHAM can then appeal this second benefit denial directly to the State's Fair Hearings Bureau.

52. Under the terms of the Contract, "Fair Hearing means the administrative decision-making process that requires aggrieved individuals to be given the opportunity to confront the evidence against them and have their evidence considered by an impartial fact finder in a meaningful time and manner."

53. In addition to these appeals processes, Defendant BCBS is required, under the Contract, to employ

> A full-time staff person dedicated to th[e Contract] who shall, with a significant degree of independence from the CONTRACTOR's management, act as an Ombudsman whose duties include but are not limited to impartially investigating and addressing Member issues and attempting to resolve them within the CONTRACTOR's organization; and identifying systemic issues including, but not limited to, the Members' ability to access services, to receive prompt attention from care coordinators and other personnel and to understand their rights and responsibilities under Centennial Care. The Ombudsman shall represent the Member on internal Centennial Care issues

and is separate and distinct from the CONTRACTOR's Grievance system and Appeals process, as prescribed in Section 4.16 of the Contract. Upon hiring the Ombudsman, the CONTRACTOR shall include in its notification to HSD where in the CONTRACTOR's organizational structure the Ombudsman is located in order to assure significant independence from plan management.

C.    **Defendant BCBS's income from the Contract.**

54.  The State of New Mexico pays Defendant BCBS a payment, called a Capitation Payment, for each Member, such as Plaintiff GRAHAM, enrolled in the Blue Cross Community Centennial program who is insured by Defendant BCBS.  This Capitation Payment is a payment the State of New Mexico makes periodically to Defendant BCBS on behalf of each Member beneficiary enrolled under the Contract.  Under the terms of the Contract, the "State makes the payment regardless of whether the particular member beneficiary receives services during the period covered by the payment."

55.  This Capitation Payment is essentially an insurance premium that the State of New Mexico pays on behalf of, and for the benefit of, Members, including Plaintiff GRAHAM.  If the services Defendant BCBS provides to or authorizes for Members cost less than the Capitation Payment the State of New Mexico makes for each Member, Defendant BCBS keeps the difference, subject to certain limitations.

56.  Under the terms of the Contract, Defendant BCBS is allowed to have an "underwriting gain." The Contract defines an "underwriting gain" as Defendant BCBS's "net income before State and federal taxes for [Defendant BCBS's] Medicaid line of business on an annual basis."

57.  If Defendant BCBS has an underwriting gain, under the terms of the contract Defendant BCBS keeps one-hundred percent (100%) of that gain up to three percent (3%)

of net capitation revenue generated annually.

58.  The Contract defines net capitation revenue as Defendant BCBS's prospective capitation premium, excluding Indian Health Service supplemental revenue, less Premium Tax, less New Mexico Medical Insurance Pool and Health Insurance Exchange Assessments during the annual period.

59. Further, the Contract allows Defendant BCBS to keep fifty percent (50%) of any underwriting gain generated in excess of that three percent (3.0%).

60.  To further ensure that its operations are profitable and that it does not become subject to a catastrophic loss, Defendant BCBS, per the terms of the Contract, maintains an insurance policy insuring itself for up to one million dollars ($ 1,000,000.00) per occurrence or per Member per incurred year, in reinsurance protection against financial loss due to outlier (catastrophic) cases.

## II.  Plaintiff GRAHAM

### A.    Plaintiff GRAHAM's requests for medical care.

61.   Plaintiff GRAHAM was born on December 16, 1964.   Over time, Plaintiff GRAHAM suffered from various medical conditions, including acute and chronic pancreatitis.  In 2019 and 2020, Plaintiff's pancreatitis became more pronounced and severe, and became profoundly debilitating.

62.  In 2019 and progressing into 2020, Plaintiff GRAHAM was hospitalized multiple times for her pancreatitis condition.  A review of medical records shows, on information and belief, that those hospitalizations occurred on May 11, 2019, June 20, 2019, September 11, 2019, September 21, 2019, December 6, 2019, December 28, 2019, January 26, 2020,

-13-

February 7, 2020, May 7, 2020, June 23, 2020, July 17, 2020, September 2, 2020, September 26, 2020, October 15, 2020, November 17, 2020, November 23, 2020, December 10, 2020, and December 27, 2020. Beginning in at least mid-2020, Plaintiff GRAHAM's condition was so severe that she was placed on total parenteral nutrition, and was continuously medicated for severe pain. Over the course of 18 months, Plaintiff GRAHAM unintentionally lost some 25 pounds.

63. Plaintiff GRAHAM's illness significantly impacted her livelihood. Plaintiff GRAHAM is a Registered Nurse, trained as a home health nurse. Over several months, Plaintiff GRAHAM lost 3 different jobs because of an inability to maintain work hours because of her illness. As a result of her illness and inability to work, Plaintiff GRAHAM became Medicaid eligible and enrolled in Defendant BCBS's Blue Cross Community Centennial program.

64. As a treatment for Plaintiff GRAHAM's acute and chronic pancreatitis, starting in June, 2020, Plaintiff GRAHAM's surgeons and gastrointestinal specialists at the University of New Mexico recommended a total pancreatectomy with islet cell autologous transplantation ("TP-IAT"). That beneficial procedure, however, was not available in New Mexico at the time, or for the rest of 2020. Plaintiff GRAHAM's physicians specifically noted in her medical records that the TP-IAT procedure was not available in New Mexico.

65. Although Defendant BCBS is required by the Contract to ensure that an Ombudsman is available to assist its insureds, such as Plaintiff GRAHAM, Defendant BCBS did not encourage or inform, through its care coordinator, Plaintiff GRAHAM of her ability and right to seek assistance from the Ombudsman.

-14-

66. Rather, Defendant BCBS sent Plaintiff GRAHAM on a wild goose chase, suggesting she go to Texas to obtain care, without telling her that care was unavailable.

67. When Plaintiff GRAHAM sought permission from Defendant BCBS to travel to Texas as suggested, Defendant BCBS told Plaintiff GRAHAM she would have to pay all expenses herself for this visit, including doctor's bills.

68. Plaintiff GRAHAM dutifully did as Defendant BCBS suggested, spending significant personal funds, unreimbursed by Defendant BCBS, to seek care in Texas, which she then learned was unavailable.

69. After doing further research on her own, Plaintiff GRAHAM sought a second opinion with respect to the TP-IAT procedure with Virginia Commonwealth University ("VCU") Health Systems medical personnel on August 28, 2020. That second opinion consultation confirmed that Plaintiff GRAHAM was a candidate for the TP-IAT procedure and that this procedure could be performed at VCU.

70. Following this second opinion, Plaintiff GRAHAM sought pre-authorization from Defendant BCBS to have this procedure done at VCU Health Systems in Richmond, Virginia. Under Medicaid federal and state laws, rules, and regulations, and the Contract, Plaintiff GRAHAM was entitled to this medical care that she requested, and entitled to have that care provided at VCU.

71. Defendant BCBS refused the requested pre-authorization for Plaintiff GRAHAM to obtain the TP-IAT procedure at VCU.

72. Defendant BCBS forced Plaintiff GRAHAM to file an internal appeal of the refused authorization. Defendant BCBS then denied the internal appeal.

73. By denying the internal appeal, Defendant BCBS forced Plaintiff GRAHAM to

-15-

file an administrative appeal to the Fair Hearings Bureau.

74. Once the Fair Hearing was convened, but before the administrative law judge started taking evidence in the case, Defendant BCBS then agreed to provide the requested authorization, causing the appeal to be dismissed. Defendant BCBS thus avoided scrutiny by the State's administrative law judge of its prior denials of care.

**B.    Defendant BCBS's unfounded and frivolous refusal to authorize medical care.**

75. On September 24, 2020, Defendant BCBS denied authorization to Plaintiff GRAHAM to have the TP-IAT procedure performed outside the State of New Mexico. Defendant BCBS told Plaintiff that her request did not "meet clinical criteria." Defendant BCBS stated the following reasons for its denial:

> We reviewed the service your doctor asked for. We also reviewed your health plan rules of coverage. Your doctor asked for you to be seen by Dr. Marlon Levy, VCU Health System Richmond, VA 23298. You have a bad pancreas. You have trouble digesting your food. You have lost weight. Medications can only help you so much. You may need surgery. It needs to be done in a hospital. However this hospital is not part of your health plan. We cannot approve you to see providers that are not part of your health plan unless it is an emergency. Your doctors notes do not say that this is an emergency. We are denying the request. This is addressed in the Blue Cross Community Centennial Member Handbook, page 18; stating services from an out-of-network provider are not covered without first getting prior authorization from Blue Cross Blue Shield of New Mexico. It is also denied as out-of-network (OON) per the New Mexico Administrative Code (NMAC) 8.308.2.9 as those providers located beyond 100 miles of the New Mexico border.

76. Contrary to Defendant BCBS's assertions, Defendant BCBS's Member Handbook, Page 18, does not state that the medical care pre-authorization sought by Plaintiff GRAHAM from an out-of-network provider can be obtained only in an emergency. Rather, the handbook states that such care can be obtained, *without pre-authorization*, on

-16-

an emergency basis. Plaintiff GRAHAM was following plan requirements to the letter, seeking the pre-authorization required by the plan for out-of-network care.

77.    Contrary to Defendant BCBS's assertions, Defendant BCBS's Member Handbook, Page 18, does not state or suggest that Plaintiff GRAHAM's medical care request should be denied. Rather, Page 18 states that the care requested is not covered without first getting prior authorization from Defendant BCBS. Prior authorization is precisely what Plaintiff GRAHAM was seeking.

78. Most egregiously, contrary to Defendant BCBS's assertions, NMAC § 8.308.2.9 does not forbid the providing of services beyond 100 miles of the New Mexico border. Rather, NMAC § 8.308.2.9 encourages services to be provided within 100 miles of New Mexico's borders but specifically *allows* medical services to be provided *beyond* 100 miles of the New Mexico border, so long as they are in the United States:

> Utilization of out-of-state providers: To the extent possible, the MCO is *encouraged* to utilize in-state and border providers, which are defined as those providers located within 100 miles of the New Mexico border, Mexico excluded. The MCO *may* include out-of-state providers in its network. All services must be rendered within the boundaries of the United States.

N.M. Code R. § 8.308.2.9(D) (emphasis added).

79.    In its initial denial, therefore, Defendant BCBS made several false and misleading statements to Plaintiff GRAHAM. The justifications Defendant BCBS gave Plaintiff GRAHAM for its denial of care were, due to their falsehood, inherently unreasonable.

80. Under the terms of the Contract, Defendant BCBS had an obligation to ensure that any decision to deny a service authorization request or to authorize a service in an amount, duration or scope that is less than requested, be made by a health care

-17-

professional who has appropriate clinical expertise to understand the treatment of the Member's condition or disease.

81. On information and belief, Defendant BCBS's September 24, 2020 denial was made by its "Clinical Director" Dr. Aiden O'Rourke, M.D. On information and belief, Dr. O'Rourke is a general surgeon, is not a gastroenterologist, is not a specialist in the treatment of acute and chronic pancreatitis, and is not a transplant surgeon. Thus, Dr. O'Rourke did not have appropriate clinical expertise to understand the treatment of Plaintiff GRAHAM's condition, contrary to Defendant BCBS's contract obligations.

82. Inconsistent with Defendant BCBS's stated reasons for denial, in his review and denial of Plaintiff GRAHAM's pre-authorization request, Defendant BCBS's Dr. Aiden O'Rourke "recommended" possible providers in New Mexico to provide the requested care. However, those "recommendations" were all for all general surgeons, none of whom were gastrointestinal or transplant specialists. Contradicting Defendant BCBS's own justification for denying medical care to Plaintiff GRAHAM, Defendant BCBS's Dr. O'Rourke also recommended the University of Colorado for "transplant services," even though the University of Colorado is outside a geographical area within 100 miles of the New Mexico border. Moreover, the TP-IAT procedure was not available at the University of Colorado at the time that Defendant BCBS told Plaintiff GRAHAM she could go there for the procedure. Defendant BCBS's Dr. O'Rourke made several false or misleading statements to Plaintiff GRAHAM.

83. Further, Defendant BCBS's Dr. O'Rourke made those "recommendations" for treatment in New Mexico all the while ignoring that Plaintiff GRAHAM's doctors had specifically noted in her medical records that the transplant procedure Plaintiff GRAHAM

-18-

required was not available in New Mexico. Thus, Defendant BCBS's Dr. O'Rourke was not familiar with or had not reviewed Plaintiff GRAHAM's medical record before denying the medical care she requested and to which she was entitled under Medicaid state and federal law, rules, and regulations and under the Contract, making his reasons for denial false and inherently unreasonable.

84.  Following this initial denial, on October 28, 2020, one of Plaintiff GRAHAM's physicians at the University of New Mexico ("UNM") wrote to Defendant BCBS, requesting that Defendant BCBS approve the TP-IAT procedure to be performed at VCU in Richmond, Virginia, noting that this procedure was not available at the UNM hospital.  Plaintiff GRAHAM's UNM physician also told Defendant BCBS that the requested procedure was medically necessary for Plaintiff GRAHAM.

85.  On November 4, 2020, Plaintiff GRAHAM's second opinion physician at the VCU Medical Center appealed to Defendant BCBS, on behalf of Plaintiff GRAHAM, to reconsider its refusal to approve the medical care requested by Plaintiff GRAHAM at VCU Medical Center.  Plaintiff GRAHAM's physician's appeal noted that neither UNM nor the University of Colorado could provide the requested medical care, the TP-IAT procedure. Plaintiff GRAHAM's physician's appeal also noted that VCU was a Center of Excellence facility with Blue Cross/ Blue Shield, although not with Plaintiff GRAHAM's particular BCBS of NM Medicaid plan.  The appeal letter stressed the urgency of the situation to Defendant BCBS.

86.  On November 4, 2020, Defendant BCBS acknowledged receiving Plaintiff GRAHAM's appeal of the initial denial decision.

87.  On November 12, 2020, Defendant BCBS's Medical Director, in an internal

-19-

Appeal Review Note, acknowledged the requested TP-IAT procedure and then stated that

Plaintiff GRAHAM's initial request was "denied as there is network adequacy for the

delivery of this service." This statement was false, and its falsehood was known, or should

have been known, to Defendant BCBS at the time that it was made.

88.    The Appeal Review Note then went on to state:

Decision Rationale: Uphold the denial for an out-of-network benefit exception
as not medically necessary. There are contracted providers available for
these services and it is not an emergency. This request does not meet
criteria for network benefit exclusion. This decision is based on Blue Cross
Community Centennial Member Handbook, page 19, Out of Network
Providers.

Member Letter Language: The request is to get a pancreas transplant from
a non-contacted provider. There are contracted providers who provide these
services. You are required to use providers that are a part of his health plan.
The request to get care from a provider that is not part of your health plan is
denied. This decision is per the Blue Cross Community Centennial Member
Handbook, page 19, Out-of- Network Providers.

89.    This Appeal Review Note contained many false statements, including 1) that

there were contracted providers available to perform a TP-IAT, 2) that Plaintiff GRAHAM

was required to use providers that were part of Defendant BCBS's health plan, and 3) that

the requested procedure was not medically necessary.    These false statements were later

communicated to Plaintiff GRAHAM.

90. Further, Defendant BCBS's own Medical Policies clearly state that autologous

pancreas islet cell transplantation may be considered medically necessary as an adjunct

to a total or near total pancreatectomy in patients with chronic pancreatitis. The medical

history of Plaintiff GRAHAM, known and available to Defendant BCBS, showed that she

was in the category of persons for whom her proposed TP-IAT would be considered

"medically necessary" under Defendant BCBS's Medical Policies.   Moreover, Plaintiff

GRAHAM's UNM physician had previously told Defendant BCBS that the procedure was medically necessary for Plaintiff GRAHAM.

91.    The Appeal Review Note was signed by Dr. David G. Williams, MD.    On information and belief, Dr. David G. Williams is a family physician, is not a surgeon, is not a gastroenterologist, is not a specialist in the treatment of acute and chronic pancreatitis, and is not a transplant surgeon.    Thus, Dr. David G. Williams did not have appropriate clinical expertise to understand the treatment of Plaintiff GRAHAM's condition, contrary to Defendant BCBS's contract obligations.

92.    On November 13, 2020, Defendant BCBS denied Plaintiff GRAHAM's internal appeal.    The written denial stated that the Physician Reviewer, Dr. David G. Williams, M.D., was board certified in Internal Medicine.    The appeal denial letter did not state that Dr. David G. Williams was a surgeon, or a gastroenterologist, or a specialist in the treatment of acute and chronic pancreatitis, or qualified with the appropriate clinical expertise to understand the treatment of Plaintiff GRAHAM's condition.    The appeal denial letter, therefore, was misleading through omission.

93.    Further, the appeal denial letter stated that Plaintiff GRAHAM had requested a "pancreas transplant," when in fact she had not.    The TP-IAT procedure is not a pancreas transplant procedure, but rather involves a pancreatectomy, or the complete removal of a patient's pancreas.    The appeal denial letter, therefore, made misleading and/or false statements.

94.    The appeal denial letter also falsely stated that "there are contract providers who provide this service."    As of November 13, 2020, Defendant BCBS knew or should have known that there were no contract providers within Defendant BCBS's network who

-21-

provided the TP-IAT procedure.

95. Both the Appeal Review Note and the appeal denial letter stated that the decision to deny Plaintiff GRAHAM's appeal was "based on Blue Cross Community Centennial Member Handbook, page 19, Out of Network Providers." Page 19 of Defendant BCBS's Centennial Member Handbook, however, is completely silent on whether Defendant BCBS forbids or will refuse to provide out-of-network services. Rather, page 19 of the Handbook only states, in relevant part, "Centennial Care does not cover services outside the United States." Thus, both the Appeal Review Note and the appeal denial letter made further misleading statements. The justifications Defendant BCBS gave Plaintiff GRAHAM for its second denial of care were, due to their falsehood, inherently unreasonable.

96. On November 20, 2020, Plaintiff GRAHAM requested a Fair Hearing from the Fair Hearings Bureau. The Bureau assigned her Case Number 20-MC-10201. The Fair Hearing was set for December 30, 2020. The action being appealed was "Denial of Out-of-Network Total Pancreatectomy with Islet Auto Transplantation Surgery."

97. The Fair Hearing took place as scheduled on December 30, 2020, with the parties appearing telephonically. At the time, Plaintiff GRAHAM was hospitalized and participated in the Fair Hearing from her hospital bed.

98. Shortly after the hearing was convened, Defendant BCBS requested a brief recess. Defendant BCBS, during that recess, agreed to provide authorization to Plaintiff GRAHAM for the TP-IAT procedure to be performed at VCU Health Systems in Richmond, Virginia. Consequently, the Fair Hearing appeal was dismissed.

99. Through its tactics and business practice of improperly or wrongfully denying

authorization for medical care, Defendant BCBS engages in a pattern and practice of discouraging claimants, and of denial and delay of care, to increase its profits.

100.  Through its tactics and business practice of improperly or wrongfully denying internal appeals to those claimants persistent enough to request an internal appeal, Defendant BCBS engages in a pattern and practice of discouraging claimants, and of denial and delay of care, to increase its profits.

101.  Through its tactics and business practice of forcing claimants persistent enough to request a Fair Hearing, Defendant BCBS engages in a pattern and practice of discouraging claimants, and of  denial and delay of care, to increase its profits.

102.  Through its tactics and business practice of, shortly before or at the penultimate moment before a Fair Hearing is actually commenced, then agreeing to authorize the medical care requested, Defendant BCBS avoids scrutiny by the State of New Mexico, and/or its administrative law judges, of its unfair and unlawful business practices, thus avoiding adverse consequences of its unfair and unlawful business practices.

## COUNT I
## BREACH OF CONTRACT

103.  Plaintiff GRAHAM incorporates by reference all allegations of the preceding paragraphs as if fully set forth herein and for her first count, for breach of contract, states as follows:

104.  Defendant BCBS is a party to Contract Number PSC 18-630-8000-0033 A4 CFDA 93.778 with the State of New Mexico and its agencies.  Some purposes of the

Contract are to provide Medicaid benefits, pursuant to federal and state Medicaid law, rules, and regulations, to which Medicaid recipients, such as Plaintiff GRAHAM and others, are entitled, on behalf of the State of New Mexico, and to provide those services in such a manner that will or is likely to improve quality of care or improve access to care for those Medicaid recipients.

105. In the Contract, the State of New Mexico manifests an intention that Medicaid recipients, such as Plaintiff GRAHAM, receive the full and complete benefits afforded to them under federal and state Medicaid law, rules, and regulations.

106. Defendant BCBS has failed to comply with the terms of the Contract.

107. Defendant BCBS has breached the Contract.

108. As a direct and proximate result of Defendant's breach, Plaintiff GRAHAM has been injured, in an amount to be shown at trial.

## COUNT II
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

109. Plaintiff GRAHAM incorporates by reference all allegations of the preceding paragraphs as if fully set forth herein and for her second count, for breach of the covenant of good faith and fair dealing, states as follows:

110. The Contract between the State of New Mexico and its agencies and Defendant BCBS includes, as a matter of law, a covenant of good faith and fair dealing.

111. The covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement. Denying a party its rights to those benefits will breach the duty of good faith implicit in the

contract.

112. Defendant BCBS has breached that covenant.

113. As a direct and proximate result of Defendant's breach, Plaintiff GRAHAM has been injured, in an amount to be shown at trial.

## COUNT III
## BREACH OF FIDUCIARY DUTY

114. Plaintiff GRAHAM incorporates by reference all allegations of the preceding paragraphs as if fully set forth herein and for her third count, for breach of fiduciary duty, states as follows:

115. Defendant BCBS is the agent of the State of New Mexico and its agencies and charged with providing the Medicaid benefits to which Plaintiff GRAHAM is entitled under federal and state Medicaid law, rules, and regulations. As the agent for the State of New Mexico and its agencies, Defendant BCBS had an obligation to faithfully and fully implement the State's Medicaid program, for the benefit of Medicaid recipients, including Plaintiff GRAHAM.

116. As agent for the State of New Mexico for purposes of providing Medicaid benefits to which Plaintiff GRAHAM is entitled under federal and state Medicaid law, rules, and regulations, Defendant BCBS is in a relationship with Plaintiff GRAHAM that is one of trust and confidence. Thus, Defendant BCBS owes a fiduciary duty to Plaintiff GRAHAM as a matter of public policy and law.

117. A fiduciary relationship exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of one reposing the confidence.

-25-

118. Defendant BCBS owed Plaintiff GRAHAM an independent fiduciary duty of the highest order or degree to implement the purposes of federal and state Medicaid law, rules, and regulations, whereby it provides benefits to Medicaid recipients, for profit, on behalf of the State of New Mexico, thus acting as an arm of the State of New Mexico, with a commensurate obligation to give full and complete effect to federal and state Medicaid law, rules, and regulations and their accompanying benefits to medically fragile citizens.

119. In addition, under the great public interest in providing assistance to medically fragile Medicaid recipients such as Plaintiff GRAHAM, Defendant BCBS as the insurer of Plaintiff GRAHAM has a fiduciary duty to its own insured, Plaintiff GRAHAM. Defendant BCBS's fiduciary duty is of the highest order in regard to Medicaid claims, i.e., the duties and standard of care required of a true fiduciary or of one designated by the State of New Mexico to implement its public policy and provide care for its most vulnerable citizens.

120. Moreover, the compulsory nature of participation in the Blue Cross Community Centennial program in order to receive Medicaid benefits due to a medically fragile citizen make the relationship between Plaintiff GRAHAM and Defendant BCBS inherently unbalanced. The adhesive nature of the relationship places Defendant BCBS in a superior bargaining position to insureds such as Plaintiff GRAHAM. The availability of punitive damages is thus compatible with recognition of Defendant BCBS's underlying public obligations and reflects an attempt to restore balance in the relationship.

121. Defendant BCBS knowingly, willfully, maliciously or with reckless disregard for the rights of Plaintiff GRAHAM and other New Mexico insureds, adopted and implemented claims handling protocols and business practices with the intent to defeat, violate, or avoid full implementation of the remedial purposes of the federal and state Medicaid law, rules,

and regulations pursuant to which Defendant BCBS provides, for profit, benefits to Plaintiff GRAHAM on behalf of the State of New Mexico. Defendant BCBS accorded greater consideration to its own interests over that of the interests of Plaintiff GRAHAM, a Medicaid recipient and beneficiary entitled to the full protection and benefit of federal and state Medicaid law, rules, and regulations.

122. Defendant BCBS breached its fiduciary duty to Plaintiff GRAHAM.

123. As a direct and proximate result of this breach, Plaintiff GRAHAM has been injured, in an amount to be shown at trial.

## COUNT IV
## VIOLATION OF THE NEW MEXICO INSURANCE CODE,
### NMSA 1978, § 59A-16-4 (1984)

124. Plaintiff GRAHAM incorporates by reference all allegations of the preceding paragraphs as if fully set forth herein and for her fourth count, for violations of the New Mexico Insurance Code, the Misrepresentation and False Advertising section, states as follows:

125. The New Mexico Insurance Code, NMSA 1978, §59A-16-4 (1984), prohibits persons from making statements which misrepresent the benefits, advantages, or conditions or terms of an insurance policy.

126. Defendant BCBS made statements to Plaintiff GRAHAM that misrepresented the benefits, advantages, conditions or terms of the Medicaid benefits Plaintiff GRAHAM was entitled to receive under federal and state Medicaid law, rules, regulations, and the Contract, or failed to disclose material facts reasonably necessary to prevent other

-27-

statements made from being misleading, contrary to NMSA 1978, § 59A-16-4.

127. As a direct and proximate result of these violations of law, Plaintiff GRAHAM has been injured, in an amount to be shown at trial.

## COUNT V
## VIOLATION OF THE NEW MEXICO INSURANCE CODE,
## NMSA 1978, § 59A-16-20 (1997)

128. Plaintiff GRAHAM incorporates by reference all allegations of the preceding paragraphs as if fully set forth herein and for her fifth count, for violations of the New Mexico Insurance Code, NMSA 1978, § 59A-16-20, the Trade Practices and Frauds section, states as follows:

129. The New Mexico Insurance Code, NMSA 1978, § 59A-16-20 (1997) prohibits certain unfair and deceptive practices with respect to claims, by an insurer or any other person, when knowingly committed or performed with such frequency as to indicate a general business practice.

130. In order to receive benefits to which Plaintiff GRAHAM was entitled under federal and state Medicaid law, rules, and regulations, Plaintiff GRAHAM was obligated to enroll as a Member of BCBS's Medicaid program, a managed care plan, and did enroll in the program, becoming an insured of Defendant BCBS.

131. Plaintiff GRAHAM, as a mandatory insured under a Medicaid program of Defendant BCBS, falls within the class of persons for whose benefit and protection the Insurance Code, § 59A-16-20, was enacted.

132. As described herein, the actions of Defendant BCBS and/or its agents were

-28-

willful violations of the Insurance Code.

133.  As described herein, the actions of Defendant BCBS and/or its agents were performed with such general and deliberate frequency as to constitute a general business practice.

134.  As described herein, the actions of Defendant BCBS and its agents were known to an officer, director, or department head within Defendant BCBS's line of supervision, and/or such officer, director, or department head authorized those actions or knowingly permitted such acts, or had prior knowledge thereof.

135.  Defendant BCBS and/or its agents committed the following practices, in violation of this law,

> A.  misrepresenting to its insured Plaintiff GRAHAM pertinent facts relating to coverages or benefits at issue, to which she was entitled, in violation of NMSA 1978, § 59A-16-20(A),
>
> B.  not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear, in violation of NMSA 1978, § 59A-16-20(E),
>
> C.  failing to promptly provide Plaintiff GRAHAM with a reasonable explanation of the basis relied on by Defendants for the denial of a claim or benefit, in violation of NMSA 1978, § 59A-16-20(N).

136.  As a direct and proximate result of these violations of law, Plaintiff GRAHAM has been injured, in an amount to be shown at trial.

## COUNT VI
## VIOLATIONS OF THE NEW MEXICO UNFAIR PRACTICES ACT,
### NMSA 1978, § 57-12-1 (2003)

137.  Plaintiff GRAHAM incorporates by reference all allegations of the preceding

paragraphs as if fully set forth herein and for her sixth count, for violations of the New Mexico Unfair Practices Act, states as follows:

138.   The New Mexico Unfair Practices Act applies to Defendant BCBS, who is defined as a "person" under the Act.  NMSA 1978, § 57-12-2(A).

139.   Under the Act it is illegal for any person to make any statement, in the connection with the providing of goods or services that may, tends to or does deceive or mislead any person. *Id.* § 57-12-2(D).

140.   Under the Act, it is illegal for any person to engage in unconscionable trade practices, including any practice that takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree, or results in a gross disparity between the value received by and the price paid. *Id.*, § 57-12-2(E).

141.   Defendant BCBS, in its dealings with Plaintiff GRAHAM breached those provisions of law.

142.  Defendant BCBS, in its dealings with Plaintiff GRAHAM, willfully engaged in the trade practices prohibited by the Act.

143.   As a direct and proximate result of these willful breaches of law, Plaintiff GRAHAM has suffered damages in an amount to be shown at trial, including actual damages, three times actual damages as allowed by law, and is entitled to recover her costs and attorney fees, all as provided by law.

## COUNT VII
## PUNITIVE DAMAGES

144.  Plaintiff GRAHAM incorporates by reference all allegations of the preceding

-30-

paragraphs as if fully set forth herein and for her seventh count, for punitive damages, states as follows:

145.   The actions of Defendant BCBS described herein were willful, wanton, malicious, reckless, oppressive, fraudulent and in bad faith, or frivolous and unfounded, or a dishonest or unfair balancing of interests, so as to merit an award of punitive damages to punish Defendant BCBS and to deter others from the commission of like offenses.

## COUNT VIII
## ATTORNEY'S FEES AND COSTS

146.  Plaintiff GRAHAM incorporates by reference all allegations of the preceding paragraphs as if fully set forth herein and for her eighth count, for attorneys' fees and costs, state as follows:

147.  New Mexico law, including the Unfair Practices Act, NMSA 1978, § 57-12-10 (2005), the Insurance Code, NMSA 1978, 59A-16-30 (1990), and NMSA 1978, § 39-2-1 (1977), allows the award of attorney fees for certain violations of law.

148.  Defendant BCBS have willfully engaged in violations of law, as set out herein, including violations of the Unfair Practices Act and the Insurance Code.

149.  Defendant BCBS is an insurer who provided first party insurance coverage to Plaintiff GRAHAM under federal and state Medicaid law, rules, and regulations.

150.  Plaintiff GRAHAM filed claims with her insurer, Defendant BCBS.

151.   Defendant BCBS acted unreasonably in failing to pay those claims or to approve medical care and in forcing Plaintiff GRAHAM to litigate those claims in the form of requesting a Fair Hearing from the State's Fair Hearings Bureau.

152.  Pursuant to NMSA 1978, § 39-2-1, as a result of Defendant BCBS's failure to pay those claims or approve medical care, Defendant BCBS is obligated to pay Plaintiff GRAHAM her reasonable attorney fees and costs.

153.  Plaintiff GRAHAM is entitled to attorney fees as set out in the Unfair Practices Act, NMSA 1978, § 57-12-10 (2005), the Insurance Code, NMSA 1978, 59A-16-30 (1990), and NMSA 1978, § 39-2-1 (1977), in amounts to be shown at trial.

## CLASS ALLEGATIONS

154.  Plaintiff GRAHAM incorporates by reference all allegations of the preceding paragraphs as if fully set forth herein and for her Class Action complaint against Defendant BCBS, states as follows:

155.  Defendant BCBS's failure to abide by its contractual obligations under the Contract, and federal and state law, rules, and regulations embodied in the Contract, has resulted in a substantial number of New Mexicans' being deprived of benefits to which they are entitled under the Centennial Care program and federal and state Medicaid law, rules, and regulations.

156.  Plaintiff GRAHAM, in accordance with NMRA 1978, Rule 1-023, states the following class definition:

> All citizens of New Mexico who were participants in the BCBS Blue Cross
> Community Centennial program and who have been denied benefits and/or
> reimbursement for goods or services for which they were eligible under the
> program, who then requested an appeal of those denials, suffered a denial
> of their appeal, requested a Fair Hearing after denial of their appeal, and
> where Defendant BCBS then reversed its denial of the appeal, causing the
> Fair Hearing Bureau appeal to be vacated or dismissed.

157.  With respect to her proposed Class, Plaintiff further states: A) more than two-

thirds of the proposed class are citizens of the State of New Mexico, B) the Defendant from whom relief is sought whose alleged conduct forms a significant basis for the claims asserted is a citizen of the State of New Mexico, C) the principal injuries resulting from the alleged or related conduct were incurred in the State of New Mexico, and D) on information and belief, during a three year period preceding the filing of this action no other class action has been filed asserting the same or similar factual allegations against Defendant BCBS on behalf of Plaintiff or members of the proposed Class.

158.   This class action, hereinafter referred to as the GRAHAM class action, is brought under NMRA 1978, Rule 1-023(B)(3), in that questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

159.   On information and belief, the class plaintiffs are so numerous that joinder of all is impracticable.  Members of the class are presently ascertainable from the records of Defendant BCBS.

160.   On information and belief, Medicaid enrollees in Defendant BCBS's Blue Cross Community Centennial program are in the hundreds of thousands.  By way of example, BCBS had the following Medicaid enrollees at certain times over the last two years:

| | |
|---|---|
| January 2019: | 220,306 |
| December 2020: | 267,795 |
| January 2022: | 291,272 |

161.   There are questions of law and fact common to the class, specifically, Defendant's policies and practices for falsely, improperly, or wrongfully denying requests

for Medicaid benefits, including internal appeals thereof, and forcing insureds to request a Fair Hearing, causing denial or delay of care, and whether these policies and practices violate the Contract and federal and state Medicaid law, rules, and regulations. The common issues predominate.

162.  The claims of the Plaintiff GRAHAM, the representative party, are typical of the claims of the class.

163.  Plaintiff GRAHAM, the representative party, will fairly and adequately protect the interests of the class.

164.  Maintenance of this action as a class would avoid inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for Defendant BCBS.

165.  The opportunity to seek class relief is of particular importance to the enforcement of consumer rights because it provides a mechanism for the spreading of costs, and allows claimants who may have individually small claims the opportunity for relief that would otherwise be economically infeasible, because they may then collectively share the otherwise prohibitive costs of bringing and maintaining the claims.

166.  The opportunity for class relief and its importance to consumer rights is enshrined in the fundamental policy of New Mexico and evidenced by our State's statutory scheme.


WHEREFORE, Plaintiff GRAHAM has stated her Complaint for Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Breach of Fiduciary Duty, Violations of the New Mexico Insurance Code, NMSA 1978, § 59A-16-4 (1984), Violations of the New

Mexico Insurance Code, NMSA 1978, § 59A-16-20 (1997), Violations of the New Mexico

Unfair Practices Act, NMSA 1978, § 57-12-1 (2003), Punitive Damages, and Attorney's

Fees, and prays the Court for certification of a class as requested herein and an award of

compensatory damages, punitive damages, attorney fees, costs, pre-judgment interest,

and any other relief the Court deems just and proper.


Respectfully Submitted,

Law Office of Pierre Levy, LLC
Attorneys for Plaintiff Julie Graham

By: _____
    Pierre Levy, Esq.
    644 Don Gaspar Ave.
    Santa Fe, New Mexico 87505
    (505) 982-5929
    pierre@levylaw.net

-35-

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
3/21/2022 11:49 AM
KATHLEEN VIGIL CLERK OF THE COURT
Judyn Martinez

FIRST JUDICIAL DISTRICT COURT
COUNTY OF SANTA FE
STATE OF NEW MEXICO
Case No. ~~D-101-CV-2022~~

JULIE GRAHAM, individually
and on behalf of
all others similarly situated,

        Plaintiff,

                                        D-101-CV-2022-00474

v.

BLUE CROSS AND BLUE SHIELD
of NEW MEXICO,

        Defendant.

### JURY FOR JURY TRIAL

    PLAINTIFF, JULIE GRAHAM,  by and through counsel, pursuant to NMRA 1978,

rule 1-038, hereby requests trial by a jury of six (6) persons in this case and herewith

deposits the sum of One Hundred Fifty Dollars ($ 150.00).

                    Respectfully Submitted,

                    Law Office of Pierre Levy, LLC
                    Attorneys for Plaintiff Julie Graham

                    By: _____
                      Pierre Levy, Esq.
                      644 Don Gaspar Ave.
                      Santa Fe, New Mexico 87505
                      (505) 982-5929
                      pierre@levylaw.net